# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
            *Plaintiff,*

    **v.**                                              Case No. **2:15-cr-20014-JAR**

**CHRISTOPHER A. PRYOR,**
            *Defendant.*

---

### Motion for Fed. R. Crim. P. 16(E) Discovery
### Motion for Confidential Legal Visitation
### And Return of Property Pursuant Fed. R. Crim. P. 41(g)

---

On August 5, 2016, the Federal Public Defender learned that confidential and privileged communications with clients housed at CCA[1] Leavenworth have been recorded by CCA staff. Further, CCA has provided those recordings to the USAO upon request. Those confidential legal communications[2] have been used by the government in pending litigation and have been disclosed as discovery to other defendants and counsel. The scale of

---

[1] Corrections Corporation of America's facility in Leavenworth is a private detention facility that houses federal pretrial detainees. The Leavenworth facility houses Kansas, Missouri, Nebraska, and sometimes Iowa detainees. CCA publicly promises "confidential contact" between detainees and their counsel. See http://www.cca.com/protecting-inmate-and-detainee-rights (Last visited August 7, 2016).

[2] See transcript, *U.S. v. Black,* D. Kan. case #16-cr-20032-JAR, transcript of status conference held July 21, 2016, pp. 12-13 (Doc. 75).

this intrusion is not yet known. We believe we are obligated to act immediately.[3]

## Introduction

The Federal Public Defender was appointed on June 15, 2016, to represent Christopher A. Pryor. Since that time, Christopher A. Pryor has been in pretrial custody at the Order of the Court and housed by the United States Marshal Service at the Leavenworth CCA. Counsel has met with Christopher A. Pryor in the attorney-client professional meeting rooms designated by CCA. Counsel's investigators, staff, and experts must also meet with clients in these rooms. Most of these rooms are equipped with video cameras.

What we understand is that, at least in certain visitation rooms, CCA Leavenworth has recorded video of our legal visits with our clients.[4] We do not yet know whether or when audio recordings were made.[5] We understand that all legal calls are also recorded, and the content of those calls are also available to the USAO. These recordings, and government access to these

---

[3] NACDL Ethics Advisory Committee Opinion 02-01 (November 2002) ("A criminal defense attorney has an ethical and constitutional duty to take affirmative action to protect the confidentiality of attorney client communications from government surveillance. This includes seeking relief from the jailers, if possible, or judicial review and seeking of protective orders.").

[4] See July, 21, 2016, transcript of status conference in *United States v. Black,* pp. 12-13.

[5] *Id.* at pp. 10-11.

2

recordings, violates our client's right to confidential and privileged communication with counsel.

## Legal Framework

1. *Prosecutorial interference with the right to counsel violates Due Process and the Sixth Amendment.*

A defendant's unfettered and private ability to consult with counsel is essential to secure the fundamental right to due process and the protections of the Sixth Amendment.[6] Conferences between counsel and the defendant at the CCA Leavenworth Detention Center are within the scope of the attorney-client privilege, the oldest of the privileges for confidential communications known to the common law.[7] The attorney-client privilege extends to

---

[6] *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984); *Mann v. Reynolds*, 46 F.3d 1055, 1061 (10th Cir. 1995) (Prison "policies will not be upheld if they unnecessarily abridge the defendant's meaningful access to his attorney and the courts. The opportunity to communicate privately with an attorney is an important part of that meaningful access."); *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990); *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974) ("An inmate's need for confidentiality in his communications with attorneys through whom he is attempting to redress his grievances is particularly important. We think that contact with an attorney and the opportunity to communicate privately is a vital ingredient to the effective assistance of counsel and access to the courts."); *Adams v. Carlson*, 488 F.2d 619, 631 (7th Cir. 1973) (recognizing "that the effective protection of access to counsel requires that the traditional privacy of the lawyer-client relationship be implemented in the prison context.").

[7] *Upjohn Co. v. United States*, 449 U.S. 383, 380 (1981); *see also In Re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006) (attorney-client privilege "dates back to the Tudor dynasty at least"). *Al Odah v. United States*, 346 F.Supp.2d 1, 10 (D.D.C. 2004) ("The privacy of these communications is "crucial to this relationship.").

"[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance."[8] It also extends to "at least those attorney to client communications which would have a tendency to reveal the confidences of the client."[9] Government interference with that right violates both constitutional guarantees, and constitutes structural error.[10]

> [A] prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant, and because a fair adversary proceeding is a fundamental right secured by the Sixth and Fourteenth Amendments, we believe that absent a countervailing state interest, such an intrusion must constitute a per se violation of the Sixth Amendment. In other words, we hold that when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed. In adopting this rule, we conclude that no other standard can adequately deter this sort of misconduct. We also note that prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.[11]

---

[8] *Fisher v. United States*, 425 U.S. 391, 403 (1976).

[9] *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting Kenneth S. Brown, *McCormick on Evidence* § 89 (6th ed. 2006).

[10] *Luis v. United States*, — U.S. —, 136 S.Ct. 1083, 1089 (March 30, 2016) (noting the "necessarily close working relationship between lawyer and client, the need for confidence, and the critical importance of trust . . ."; and that wrongful deprivation of counsel is structural error).

[11] *Schillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

This rule recognizes that the accused "does not enjoy the effective aid of counsel if he is denied the right of private consultation [.]"[12] If discovery of materials provided by an attorney to a client were permitted, "[t]he effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."[13]

> ### 2. *Videotaping client meetings is prosecutorial interference with the right to counsel.*

The Kansas Supreme Court addressed a milder form of our problem in *Case v. Andrews*, 226 Kan. 786 (Kan. 1979). *Case* held that,

> the Lyon County jail policy of visually monitoring all consultations between attorneys and clients is an unreasonable interference with the right to confidential attorney-client communications. The confidentiality of communications between an attorney and his client who is charged with crime should be carefully protected by the courts.[14]

Because "absent a showing of any risk to the order or security of the jail, the practice of visually monitoring [without audio recording] an attorney-client

---

[12] *Mastrian v. McManus*, 554 F.2d 813, 820–21 (8th Cir. 1997), cert. den., 433 U.S. 913 (1977) (It is clear "that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation[.]"); *Coplon v. United States*, 191 F.2d 749, 757 (1951); *Geders v. United States*, 425 U.S. 80 (1976); *Hoffa v. United States*, 385 U.S. 293 (1966); *Massiah v. United States*, 377 U.S. 201 (1964); *United States v. Rosner*, 485 F.2d 1213 (2nd Cir. 1973), cert. denied, 417 U.S. 950 (1974); *United States v. Brown*, 484 F.2d 418 (5th Cir. 1973), cert. denied, 415 U.S. 960 (1974); *Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953).

[13] *Upjohn*, 449 U.S. at 398.

[14] *Id.* at 790.

conference when privacy is requested, is unreasonable. Such unreasonable interference violates an accused's Sixth Amendment right to effective representation by counsel."[15]

Our situation, as we apprehend it, is a far more significant interference with the right to counsel than the circumstances considered in *Case*. The meetings between the Federal Defender or CJA counsel and our respective clients are not only visually monitored, but recorded. Those recordings are

---

[15] *Id.* at 791; see also *State v. Walker*, 804 N.W.2d 284, 295 (Iowa 2011) ("in the absence of any individualized showing of a safety or security risk video surveillance [even without audio recording] violates an arrestee's right to 'see and consult confidentially' with his attorney 'alone and in private.'"); *People v. Dehmer*, 931 P.2d 460, 463 (Colo.App. 1996); *State v. Sherwood*, 174 Vt. 27, 800 A.2d 463, 466 (2002) ("The tape itself is evidence that defendant's conversation with counsel was not, in fact, private."); *Moore v. Janing*, 427 F. Supp. 567, 576 (D. Neb. 1976) ("there is no physical facility specifically set aside for this purpose in which the pretrial detainees have a right to consult privately with attorneys and witnesses. Such conditions impede the detainees' ability to prepare for trial, jeopardize the confidentiality of their attorney-client communications and invade their right to privacy."); compare 66 Fed. Reg. 55065(d) ("In any case where the Attorney General specifically so orders, based on information from the head of a federal law enforcement or intelligence agency that reasonable suspicion exists to believe that a particular inmate may use communications with attorneys or their agents to further or facilitate acts of terrorism, the Director, Bureau of Prisons, shall, in addition to the special administrative measures imposed under paragraph (a) of this section, provide appropriate procedures for the monitoring or review of communications between that inmate and attorneys or attorneys' agents who are traditionally covered by the attorney-client privilege, for the purpose of deterring future acts that could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.").

then, at least in some cases, provided to the United States Attorney's Office. The documents we review with our clients, how our clients react to those documents, and the notes taken by client and counsel are open to government inspection and review. This arrangement chills our client's exercise of their right to counsel, as they must, "be hesitant to disclose names and information relevant to the attorney's investigation and necessary to the advice sought."[16] Such conditions impede our clients' "ability to prepare for trial, jeopardize the confidentiality of their attorney-client communications and invade their right to privacy."[17] Allowing the government to monitor these meetings "flies in the

---

[16] *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052-53 (8th Cir. 1989); *Weatherford v. Bursey*, 429 U.S. 545, 554 n. 4 (1977) (noting that the "fear that some third party may turn out to be a government agent will inhibit attorney-client communication to a lesser degree than the fear that the government is monitoring those communications through electronic eavesdropping."); *United States v. DiDomenico*, 78 F.3d 294, 299 (7th Cir. 1996) (presenting a hypothetical where the government records conversations between criminal defendants and their lawyers without turning the recordings over to the prosecution, and remarking that the practice would "greatly undermine the freedom of communication between defendants and their lawyers and with it the efficacy of the right to counsel, because knowledge that a permanent record was being made of the conversations ... would make the defendants reluctant to make candid disclosures.").

[17] *Moore v. Janing*, 427 F.Supp. 567, 576 (D. Neb. 1976), superseded on other grounds by *Bell v. Wolfish*, 441 U.S. 520 (1979), *also see United States v. DiDomenico*, 78 F.3d 294, 299 (7th Cir. 2004) ("knowledge that a permanent record was being made of the conversations . . . would make the defendants reluctant to make candid disclosures.").

face of the foundational principle of the attorney-client privilege,"[18] "lay[ing]

waste to the value of the privilege."[19]

### 3. Inaction in the face of the government's surveillance would threaten to waive the attorney-client privilege.

The attorney-client privilege is "virtually inviolable" unless waived.[20]

Waiver may be express or implied. An "[i]mplied waiver occurs when a party

claiming the privilege has voluntarily disclosed confidential information on a

given subject matter to a party not covered by the privilege."[21] The Federal

Defender believes that visiting clients at CCA, while subject to video

recording, threatens the attorney-client privilege. The "presence of the

recording device [is] the functional equivalent of the presence of a third

party," such that the attorney-client privilege is destroyed.[22] Once the

---

[18] *Al Odah*, 346 F.Supp.2d at 11.

[19] *Id. citing Weatherford v. Bursey*, 429 U.S. 545, 554 (1977).

[20] *United States v. Ary*, 2005 WL 2367541 (D. Kan. 2005).

[21] *Id.*; see also *Hanson v. U.S. Agency for International Development*, 372 F.3d 286, 293–94 (4th Cir. 2004).

[22] *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir.2003); see also *United States v. Walker*, 2011 WL 2728460 at 1 (M.D. Ala. 2011); *United States v. Mitchell*, 2013 WL 3808152 (M.D. Fl. 2013) ("Both individuals having heard the automated message, and Newby's action of affirmatively pressing a phone key to accept the calls, obviates any reasonable expectation of privacy between the attorney and client in these two calls because Newby and Mitchell each knew the calls were being recorded. Furthermore, Mitchell and Newby implicitly consented to the recording of the calls by continuing the conversations despite the warning."); *Modelle v. Fauro*, 2010 WL 624023 (N.D. N.Y. 2010).

invasion is known to counsel, she has "a duty to seek to end the surveillance, discover the true extent of it, and find a remedy for what has already happened. One cannot simply rely upon *post hoc* use of the exclusionary rule because the harm to the ability of the criminal defense lawyer to adequately defend has already occurred and continues, and it substantially risks infecting the fairness of the trial." [23] That is one reason 18 USC § 3142 requires that a person detained awaiting federal trial be "afforded reasonable opportunity for private consultation with counsel."

We assert the privilege now, because delay may cut against a later invocation.[24]

### 4. *The remedies requested below are appropriate and necessary under these circumstances.*

Christopher A. Pryor asks the Court to Order the government to comply with Fed. R. Crim. P. 16(E): production of objects or documents within the government's possession or control that is i) material to the defense, and iii) an item belonging to the defendant. Videos of legal visitation and legal phone

---

[23] NACDL Ethics Opinion, 02-01, *supra*, 5 and 15.

[24] *Ary* at 7 ("While the court may have been willing to accept a claim of privilege asserted during his review of the contents of the black plastic box, now it appears that counsel has delayed too long."); *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir.1992) (noting that the privilege will be waived "if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.").

calls in the government possession are material to the defense, as its seizure may give rise to remedies outlined in *Schillinger v. Haworth*[25] and subject to suppression under the Fourth or Sixth Amendment based on government intrusion into confidential legal material. Second, because the video is of the attorney or other member of the legal team and the client, the content of that video is an item that belongs to the defendant. The same is true for the content of the phone calls. For these reasons, the government should immediately identify and produce any such recordings to the defense under Rule 16(E).

Rule 41(g) could also provide an immediate remedy for this violation.[26] The rule provides a mechanism for a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." [27] Under this Rule, "[p]roperty" includes not only "tangible objects" such as "documents," but also "information."[28] The video recordings at issue here are work-product "property." The recordings permit the viewer to examine documents passed between counsel and client. These documents would include reports of witness interviews, expert reports, and summaries of

---

[25] 70 F.3d at 1142.

[26] *See* Fed. R. Crim. P. 41(g).

[27] *Id.*

[28] Rule 41(a)(2)(A).

discovery. These reports often mix facts with "strategies and legal impressions."[29] The recordings also contain attorneys writing notes during their client meetings. These notes will almost always contain the "mental processes of the attorney… ."[30]

Possessing a recording that shows these documents is functionally equivalent to possessing the documents themselves — the recording permits a viewer to pause the video and scrutinize those documents. Thus, by possessing a copy of these documents, the government possesses the "work product" of the attorney. That work product belongs either to the client or the attorney, and Rule 41 is a proper vehicle to compel its return.[31]

The Rule's distinction between those who are aggrieved by an illegal "search and seizure" and those aggrieved by the "deprivation of property" is meant to extend the Rule's protection to not only those harmed by an initially unlawful seizure, but also to those harmed by the retention of property whose

---

[29] *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

[30] *United States v. Nobles*, 422 U.S. 225, 238 (1975).

[31] *See In Re Grand Jury Subpoena*, 561 F.3d 408, 411 (5th Cir. 2009); *Murphy v. Gorman*, 271 F.R.D. 296, 320 (D.N.M. 2010).

seizure may have been legal[32]: ". . . Rule 41(e)[33] provides that an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it."[34]

## Remedies

There are two distinct but related issues here. The first is that CCA records and retains confidential legal communication. The second is that it is available to the government, without notice to the defense.

On the first issue, until we are clear on the extent to which the attorney-client privilege is compromised by meeting with our clients at CCA Leavenworth, we will refuse to do so. We ask the Court to Order CCA to stop recording legal communication, including video recording legal visitation and recording legal phone calls. Until such order is put into effect, our client

---

[32] "Privileges for confidential communications are more absolute, narrower in scope, and broader in application than the Fourth Amendment exclusionary rule. As previously stated, the exclusionary rule is qualified in the sense that a government showing of probable cause can justify the issuance of a warrant authorizing a search or seizure. Under the dominant Wigmorean paradigm, privileges for confidential communications are absolute." Edward Imwinkelried, *The Dangerous Trend Blurring the Distinction Between a Reasonable Expectation of Confidentiality in Privilege Law and a Reasonable Expectation of Privacy in Fourth Amendment Jurisprudence,* 57 Loy.L.Rev.1, 7 (Spr. 2011).

[33] The 2002 amendments moved subsection (e) to (g) and made some "minor stylistic changes." *United States v. Albinson*, 356 F.3d 278, 279, n. 1 (3rd Cir. 2004).

[34] Rule 41, Advisory Comm. Note to the 1989 amendments.

should be transported to the Courthouse to accommodate a confidential setting for a *contact* legal visitation. Otherwise, confidential attorney-client communication that is accessible to third parties violates the Constitution and canons of ethics.

On the second issue, we ask the Court to Order the government to identify whether attorney-client communications have been provided by CCA in this case and, if so, whether the AUSA or case agents have reviewed the recordings.  Then, we ask for notice of whether any of our client's confidential attorney-client communications are in possession of the USAO in relation to any other case, particularly as part of *U.S. v. Black,* D. Kan. Case # 16-cr-20032-JAR.

If so, the recordings should be identified, preserved, and returned to the defense, as set forth in Rules 16(E) and 41(g). At that point, we reserve the right to request any further sanctions recognized by the Tenth Circuit in *Schillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).[35]

---

[35] Identifying as appropriate remedies the recusal of government counsel, exclusion of evidence, retrial, or dismissal. 70 F.3d at 1143.

## Conclusion

Similar motions have been contemporaneously filed in other pending cases in this District, including the requests for discovery, for evidentiary hearings, and for an Order for CCA to stop recording confidential legal communication. Here, Christopher A. Pryor asks for the Court to set this for hearing and then to provide appropriate and necessary remedies described above.

Respectfully submitted,

s/ Chekasha Ramsey
CHEKASHA RAMSEY, #78476
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas 66101
Telephone (913) 551-6712
Fax: (913) 551-6562
E-mail: Che_Ramsey@fd.org

s/ Melody Brannon
MELODY BRANNON, #17612
Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, Kansas  66603
Telephone: (785)-232-9828,
Fax: (785)232-9886
E-mail: melody_brannon@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Terra Morehead
United States Attorney's Office
Terra.Morehead@usdoj.gov

s/ Chekasha Ramsey
CHEKASHA RAMSEY